### HARRIET D. SNELL *vs.* BENJAMIN SNOW, JR.

A declaration, in an action for slander, alleged that the defendant falsely and maliciously said of the plaintiff, " she is a bad girl, a very bad girl, and unworthy to be employed by any company in Lowell; meaning thereby, that the plaintiff was a prostitute, and had been guilty of fornication, lewdness, lasciviousness and wantonness." *Held,* that the declaration was insufficient, for want of averments and a colloquium that would warrant the innuendo.

On the trial of an action for slander, a witness, who testifies to the words spoken by the defendant, cannot be permitted to state what meaning he understood the defendant to convey by the words.

SLANDER. The first count in the plaintiff's declaration alleged that the defendant, on the 28th day of November 1844, at Lowell, " in the presence and hearing of divers good people of this Commonwealth, did loudly and publicly speak, utter and publish the following false, malicious and scandalous words, of and concerning the plaintiff, to wit, ' she (meaning the plaintiff) is a bad girl;' then and thereby meaning and intending that the plaintiff was a prostitute, and had committed the atrocious crime of fornication." The second, fourth and fifth counts alleged that the defendant, on different days, said of the plaintiff, " she is a very bad girl," meaning

thereby that she was a lewd, lascivious and wanton person, and had committed and was guilty of the crimes of fornication, prostitution, lewdness, &c. &c. The third count alleged that the defendant, on the 29th of November 1844, said of the plaintiff, " she is a bad girl, and unworthy to be employed by any company in Lowell," meaning, as is alleged in the other counts. The sixth count alleged that the defendant, at Lowell, on the 2d of December 1844, " did loudly and publicly, openly and falsely, charge the plaintiff with being guilty of the crimes of fornication, lewdness, lasciviousness and wantonness."

The defendant pleaded the general issue, and the case was tried in the court of common pleas, before *Washburn,* J. at September term 1846.

When the counts were read to the jury, the defendant objected that they were insufficient; the words alleged to be spoken not being actionable, without a further colloquium than is contained in said counts. The judge sustained the objection as to all the counts but the sixth, and the trial, by his direction, proceeded on the sixth count alone.

Jotham S. French was called as a witness by the plaintiff, and testified as follows : " I went to the counting room of the Middlesex Company, to see if there was not some way in which matters could be fixed, so that the plaintiff could be employed. The defendant said he did not know, or did not see, any way it could be fixed ; she was a bad girl, a very bad girl. I then turned to Mr. Lawrence, and told him I wished there could be some way fixed, so that she could go to work. I told the defendant, in the first part of the time I was there, that the plaintiff had worked for me, and her reputation stood high then. The defendant said she must have altered very much since, for she was now a very bad girl. I told Mr. Lawrence I was aware of their rules, but I supposed them to apply only to those wilfully vicious. He replied that such was the case. The defendant was then present. I turned to him, and inquired what she had done to render her unfit. He replied that she was a bad girl, and ought not to be allowed

around among other girls ; and I think there was included in
the statement, ' she was unfit to be employed.' I cannot say
whether this expression was before or after he used the words
' ought not to be around among other girls.' "

The plaintiff then inquired of the witness, what meaning
he understood the defendant to convey by these words. To
this inquiry the defendant objected, and the judge ruled, that
the witness might testify as to any existing facts or circum-
stances, to which the defendant referred, if any ; but that, as
the witness had proposed to give the whole conversation, it
was for the jury to determine what was meant by the lan-
guage, and that it was not competent for the witness to testify
as to his understanding of the meaning of the defendant in
the words made use of ; and that the above inquiry was not
in this case competent.

There was testimony, on the part of the defendant, as to
what was said at the interview at the counting room, some of
which was contradictory to that of the above witness.

The jury returned a verdict for the defendant. The plain-
tiff alleged exceptions to the judge's ruling as to the sufficiency
of the first five counts, and as to the competency of the in-
quiry last put to the witness.

*J. G. Abbott,* for the plaintiff. The question, how the
witness understood the defendant's words, was a proper one.
It is stated in various authorities, that " the understanding of
the hearers is the rule to go by," and that " the words shall
be taken in the sense in which the hearers understood them."
*Fleetwood* v. *Curley,* Hob. 267. *Harrison* v. *Thornborough,*
Gilb. Cas. 114, 117. *Oldham* v. *Peake,* 2 W. Bl. 959, and
Cowp. 275. *Read* v. *Ambridge,* 6 Car. & P. 308. *Roberts*
v. *Camden,* 9 East, 96. *Studdard* v. *Linville,* 3 Hawks, 474.
1 Vin. Ab. Actions for Words, A. b. 2 Greenl. on Ev. § 417.
2 Selw. N. P. (11th ed.) 1257.

*Hopkinson & B. F. Butler,* for the defendant. The five
special counts (which the plaintiff's counsel seems to have
given up) contain no colloquium that warrants the innuendoes
which enlarge the meaning of the words. *Bloss* v. *Tobey,*

2 Pick. 320, 328. *Carter* v. *Andrews*, 16 Pick. 1. *Barham* v. *Nethersall*, Yelv. 22. *Rex* v. *Alderton*, Sayer, 280.

The question put to the witness was clearly incompetent. The jury are to decide on the meaning of the words, from the words themselves, and the concurring facts proved.

SHAW, C. J. From that portion of the evidence stated in the bill of exceptions only, it seems difficult to avoid the belief that the words relied on, to maintain this action of slander, constituted a privileged communication, and so were not actionable. But as the case was not placed on that ground, and as it may be presumed that the whole case does not appear in the bill of exceptions, we shall consider only the points taken, without regard to any other supposed views, which might have been suggested.

1. The first objection taken by the plaintiff is, that the court sustained the defendant's exception to the first five counts, as insufficient, because the words set forth, without suitable averments and *colloquia* to explain and enlarge their meaning, if the case would warrant it, were not actionable.

This would at first appear to be a demurrer *ore tenus* to these counts, to be decided by the court, which was sustained, and which would be irregular. But taken all together, we think that it was an expression of opinion, on the part of the court, that these counts would be deemed bad on a motion in arrest of judgment, should a verdict be rendered on them, and therefore it would be useless to go into evidence to obtain a verdict, which could not be the foundation of a judgment ; and that in this decision the party acquiesced, and proceeded upon the sixth count. This count was general, alleging that the defendant openly and publicly charged the plaintiff with being guilty of the offence of fornication, lewdness, &c. and in effect, therefore, charged, in another form, the same slanders set forth more particularly in the preceding counts. By this course, in confining the evidence to the last count, the plaintiff could sustain no inconvenience, if the judge was right in his opinion that those counts were bad and insufficient. On the contrary, she would obtain a benefit from it, by being

24*

saved the expense of a useless trial, and by avoiding the hazard of losing the benefit of a verdict, if she should get one, on a good count, because such count was connected with those which would be held bad on a motion in arrest of judgment.

This court entirely concurs in the opinion of the court of common pleas, that the first five counts are bad. The words set forth in all of them were, " she is a bad girl," or " a very bad girl." There was no averment of other conversation which took place at the same times, nor any averments of other exterior facts, which, if true, would give a peculiar force and effect to the words used, or show that, though in their natural meaning they did not impute unchaste conduct to the plaintiff, yet, in the connexion in which they were used and applied to the plaintiff, they would have that effect. It is true that these words are greatly enlarged and expanded by the innuendoes ; but these cannot aid the declaration, and make it good. The reasons for this are so fully stated, and the point is so decidedly settled, in the cases of *Bloss* v. *Tobey*, 2 Pick. 320, and *Carter* v. *Andrews*, 16 Pick. 1, that it seems unnecessary to recapitulate them.

2. The other exception of the plaintiff is also, in the opinion of the court, untenable. The witness, after stating all that the defendant said, with all the attendant circumstances and connexions, was asked what meaning he understood the defendant to convey by these words. The judge very properly decided that the witness might testify to any existing facts or circumstances, to which the defendant alluded and referred, if any ; but, having given the whole conversation, it was for the jury to determine what was meant by the language used, and that it was not competent for the witness to testify to his understanding of the defendant's meaning, in the language used. If the words, in their ordinary sense, according to the rules of language, imputed a charge of unchasteness and crime, or if, taken in their connexion with other facts or words, they would bear that meaning, we are to presume that the jury would so find. If in their natural import, or with accompanying words and facts, they would not hear

that meaning, the witness's understanding of them could not legitimately govern or aid the jury, and would therefore be incompetent. It would be to make the defendant's liability depend, not on his own malicious intent and purpose, in using the language, which might be quite innocent and free from blame, but upon the misconception or morbid imagination of the person in whose hearing they were spoken.

*Exceptions overruled.*